**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard SHERWIN and Ronald Coryell, Defendants-Appellants.**

**No. 76–3186.**

United States Court of Appeals, Ninth Circuit.

Oct. 21, 1977.

Rehearing and Rehearing En Banc Denied Jan. 24, 1978.

Kennedy, Circuit Judge, concurred in the result.

Robert Eugene Smith, Michael Clutter, Atlanta, Ga., Richard J. Abrams, Sherman Oaks, Cal., argued, for defendants-appellants.

Mark O. Heaney, Asst. U. S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee.

Before WRIGHT and KENNEDY, Circuit Judges, and SCHWARTZ, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Sherwin and Coryell were convicted of seven counts of interstate shipment of obscene materials for sale or distribution in violation of 18 U.S.C. §§ 1462 & 1465.[1] Sherwin was also convicted of conspiracy to use a common carrier for interstate transportation of obscene matter.[2]

Coryell shipped magazines and playing cards to Sherwin, as Superhawk Industries, in Van Nuys, California. When the consignment arrived and was unloaded, FBI agents who had known the shipment was en route obtained search warrants and searched two Superhawk locations. Among the items seized was a variety of sexually explicit erotica.

At trial Sherwin moved to suppress certain evidence seized, alleging that the search warrants were issued without probable cause and that some seized items were not described in the warrants. The motion was denied.

Over defense objection, the district court instructed the jury that the scienter required on the part of the defendants was only knowledge of the "sexual orientation" of the materials shipped.

On appeal two arguments are made: (1) that the court erred in denying the motion to suppress, and (2) that it erred in instructing the jury on the issue of scienter. We affirm in part and reverse in part.

* Of the Southern District of California.

1. Defendant-appellants were originally charged with 31 counts. Counts 2 to 31 charged violations of 18 U.S.C. §§ 1462 & 1465. They were convicted on counts 5, 6, 7, 17, 18, 19, and 22.

2. Count 1 of the indictment.

3. In *United States v. Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391 (1974), *cert. denied*, 419 U.S.

I.

THE MOTION TO SUPPRESS

A. Sufficiency of the Search Warrant Affidavits.

Appellants contend that the affidavits relied on by the magistrate in issuing the search warrants were insufficient to provide probable cause to believe that any crime was being committed because they gave no reason to believe that the materials shipped to Van Nuys were obscene.

This is a sensitive area. More than once the Supreme Court has struck down search warrants based on an officer's conclusory allegation that, after viewing the materials, he found them to be obscene. *E. g., Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); *Lee Art Theater v. Virginia*, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968).

In this case, however, the affidavit used to obtain the search warrant contained more than conclusory allegations of obscenity. Specifically, it stated that the coming shipment of explicit magazines, including "Private No. 8," contained color photographs of

completely nude males and females engaging in various sexual activities, including sexual intercourse, cunnilingus, oral copulation and other sexually explicit acts. . . .

█ The firmly established rule is that the warrant must stand or fall solely on the contents of the affidavit if it is the only matter presented to the issuing magistrate. *United States v. Melvin*, 419 F.2d 136 (4th Cir. 1969).

█ The description in the agent's affidavit was sufficient to allow the magistrate to make his own determination of probable cause. The affidavit was more than a mere conclusion on the agent's part. It gave specific facts as to the magazine's contents.[3]

1127, 95 S.Ct. 815, 42 L.Ed.2d 828 (1975), the court upheld the sufficiency of a search warrant affidavit with this descriptive language: "The . . . 'films depict' not only 'a man and a female engaged in sexual intercourse [and] various other sexual activities by males and males [and] males and females.' " *Id.* 163 U.S.App.D.C. at 402, 502 F.2d at 404.

According the judicial determination the "great deference" it is due by reviewing courts, *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the issuance of the warrant was proper.

B. *Execution of the Search Warrants.*

One of the two search warrants under which the agents operated in this case authorized the seizure of a "sexually explicit magazine, entitled 'Private No. 8' " from an address on Burnet Avenue, Van Nuys, California. Although this was the only publication referred to in the search warrant, the agents also seized the following publications at that address:

3 copies of "Private No. 7"
3 copies of "Private No. 11"  .
3 copies of "Color Climax No. 1"
3 copies of "Color Climax No. 2"
3 copies of "Color Climax No. 3"
3 copies of "Color Climax No. 4"
copies of "Homosexual Boys."

"Private No. 8" and "Color Climax No. 3 and No. 4" were the bases of the counts on which appellants were later convicted and sentenced.

The government argues that seizure of the magazines not identified in the search warrant was proper under either the "nexus" or "plain view" exceptions to the general Fourth Amendment prohibition against unreasonable searches and seizures. Both exceptions have been recognized in this circuit. *Louie v. United States*, 426 F.2d 1398 (9th Cir.), *cert. denied*, 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158 (1970); *United States v. Damitz*, 495 F.2d 50 (9th Cir. 1974).

Appellants argue, however, that these exceptions to the warrant requirement are not applicable here when the materials seized are arguably protected by the First Amendment. We agree.

The Supreme Court cases of *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), *Lee Art Theater v. Virginia*, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), and *Marcus v. Search Warrant of Property*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), lead us to this conclusion. In those cases the Court struck down the seizure of films and books because there was no step in the procedures of each case prior to the seizures designed to focus searchingly on the question of obscenity.

There were two fatal flaws in the procedure disapproved in *Marcus v. Search Warrant, supra,* for example. Not only were the search warrants issued on the conclusory opinion of a police officer that the publications sought to be seized were obscene but, in addition, the broad authority given the police officer under the warrants to seize "obscene   .   .   .   publications" impermissibly allowed each officer to make an *ad hoc* determination of obscenity at the site of the seizure. 367 U.S. at 731–32, 81 S.Ct. 1708.

The Court noted that the warrants in *Marcus* posed problems not "raised by the warrants to seize 'gambling implements' and 'all intoxicating liquors'." *Id.* at 731, 81 S.Ct. at 1716. This thought was later echoed in *Roaden* where the Court stated:

> The seizure of instruments of a crime, such as a pistol or a knife, or "contraband or stolen goods or objects dangerous in themselves,"   .   .   .   are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth   .   .   .   Amendment standards.

413 U.S. at 502, 93 S.Ct. at 2800.

In *Roaden* it was not enough that a copy of the allegedly obscene film was seized *incident to the arrest* of the theater manager. As the Court noted:

> The Fourth Amendment proscription against "unreasonable   .   .   .   seizures"   .   .   ., must not be read in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material.

*Id.* at 501, 93 S.Ct. at 2800.

As one commentator stated about *Roaden* : "The Court assumed that with respect to garden variety contraband, such a sei-

zure would have been valid."[4]  We are not dealing with garden variety contraband in this case, however.  Because of the First Amendment, the seizure of all publications must meet higher procedural standards than normal.  As noted by the Court:

> .  .  .  [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. .  .  .  [T]he separation of legitimate from illegitimate speech calls for .  .  sensitive tools  .  .  ..

*Speiser v. Randall*, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, quoted in *Marcus*, 367 U.S. at 731, 81 S.Ct. 1708.

The Court reiterated its point years later in *Roaden* :

> As we stated in *Stanford v. Texas* [379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965)]:
>
> "In short,  .  .  .  the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain.  .  .  .  No less a standard could be faithful to the First Amendment freedoms.  .  .  ."

413 U.S. at 504, 93 S.Ct. at 2801 (citations omitted).

■  The importance of protecting First Amendment freedoms precludes police officers from making *ad hoc* determinations at the scene as to which materials are probably obscene.  *See United States v. Kelly*, 529 F.2d 1365 (8th Cir. 1976).  Neither the "nexus" or "plain view" doctrines, therefore, provide a justification for the seizure of publications not identified in the warrant.  The use of these doctrines implies, *a fortiori*, that the officer, although legally on the premises to search, made the initial determination of probable obscenity rather than having it made by a magistrate or other judicial officer.  The Supreme Court cases forbid this.

A preferable and less intrusive method would be for the officers to seal the area to prevent destruction of any publications while they obtained another warrant.  This procedure has been used and approved in the context of an obscenity investigation.[5]

The fact that the agents took only samples and did not confiscate all cartons of the magazines does not solve the underlying problem that a magistrate failed to "focus searchingly on the question of obscenity" prior to the seizure of all the magazine sample copies but "Private No. 8."  As stated by the Eighth Circuit when responding to the government contention that the seizure was reasonable because only sample copies were taken:

> We find this distinction untenable, however, and inconsistent with the thrust of recent Supreme Court decisions.  See *Roaden v. Kentucky*, 413 U.S. 496, 501–06 [93 S.Ct. 2796, 37 L.Ed.2d 757] (1973).  A contrary conclusion would reduce First Amendment materials such as books and magazines to lesser rather than greater

4.  Letwin, "Regulation of Underground Newspapers on Public School Campus in California," 22 U.C.L.A.L.Rev. 141, 172 (1974).

5.  This procedure was approved in *G.I. Distributors, Inc. v. Murphy*, 490 F.2d 1167 (2nd Cir. 1973).  There, police had search warrants authorizing the seizure of six copies of 56 magazines which were allegedly obscene.  When they went to the warehouse of G.I. Distributors, they discovered 19,000 additional copies of the same magazines.

> "The police did not destroy the material, transport it, or apparently even interfere with the owners' access to it.  They merely prevented the owners from moving the magazines for the period  .  .  ..  The courts have often advised police that when they have no warrant for a search or seizure, the proper course is to watch the item under suspicion in order to prevent it from being moved, during which time the search warrant can be obtained."

*Id.* at 1170.  Although the issue in *G.I. Distributors* differs from that in this case and the factual pattern is distinguishable, the procedure used is equally applicable.  (*G.I. Distributors* considered whether temporary sequestration of allegedly obscene magazines before an adversary hearing to determine the questions of obscenity was unconstitutional.)

adherence to the warrant requirement of the Fourth Amendment.

*Kelly, supra,* 529 F.2d at 1373.

■ We conclude that prior restraint of the right to expression demands a stricter evaluation of reasonableness. In the absence of exigent circumstances,[6] seizure of First Amendment materials should observe traditional constitutional safeguards and allow a judge to focus searchingly on the question of obscenity before seizure.

The convictions based on "Private No. 8" are affirmed because proper procedures were followed prior to its seizure. Because the officers exceeded the scope of the warrant in seizing other undescribed written material, the convictions on those counts are reversed.[7]

## II.

### JURY INSTRUCTIONS

At trial, the district court instructed the jury that the scienter required of the defendants was only knowledge of the "sexual orientation" of the materials shipped. Defendants objected to the instruction and asked that the jury be charged that the government had the burden of proving knowledge on the part of the defendants of the "contents, character and nature" of the materials in order to establish scienter.

They relied on language in *Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974), which stated that it was "constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials." In *Hamling,* however, the Court also specifically approved the instructions given by the district court in the case.

> . . . [T]he District Court instructed the jury, *inter alia,* that in order to prove specific intent on the part of these petitioners, the Government had to demonstrate that petitioners "knew the envelopes and packages containing the subject materials were mailed or placed . . . in Interstate Commerce, and . . . that they had knowledge of the character of the materials."

418 U.S. at 119–120, 94 S.Ct. at 2909.

These instructions required only the defendants be aware of the *character of the materials.* Another circuit has equated this requirement with a "general knowledge that the material is sexually oriented." *United States v. Linetsky,* 533 F.2d 192, 204 (5th Cir. 1976).

■ In light of the Court's approval of the district court's instructions in *Hamling* and the Fifth Circuit's decision in *Linetsky,*

---

**6.** We do not find exigent circumstances in this record and do not decide that issue. It does appear, however, that the outcome would be different if exigent circumstances were present. As stated by the Court: "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden v. Kentucky,* 413 U.S. at 505, 93 S.Ct. at 2805.

**7.** The issue we now decide was not presented in *United States v. Sherwin,* 539 F.2d 1 (9th Cir. 1976) (en banc). There a terminal inspector turned over to FBI agents two books from a damaged carton which he believed to be obscene. After an independent determination that the books were probably obscene, the magistrate issued a search warrant. In executing it, however, he had the 17 cartons of books delivered to him. The search, executed in his presence, turned up additional books, three of which were among the four titles in the subsequent indictment.

On appeal from their conviction, appellants raised the issue of whether they had a right to an adversary hearing before seizure of the allegedly obscene publications. We held that, as long as a neutral magistrate personally examined the books and independently determined probable cause for obscenity, the procedure was proper, so long as a prompt adversary hearing was available on request.

The issue of whether the books found unexpectedly when the cartons were opened were properly seized was not raised. Even if their seizure could be justified on the grounds that the magistrate was present the moment the cartons were opened, or because the agents had no intention of seizing more than the original two books brought to their attention by the terminal inspector, there is no similar justification for the seizure of the additional magazines in the present case.

we conclude that the instruction of the district judge was sufficient. Defendants' proposed instruction using the language of *Hamling* concerning the "contents, nature and character of the materials," may have been preferable but the language used by the district judge is adequate to sustain the conviction.

CONCLUSION:

The convictions on counts 5, 6, and 7, based on "Private No. 8," are affirmed. Count 1, the conspiracy count on which Sherwin was convicted, is also affirmed. Because the magistrate did not make an independent factual determination about the probable obscenity of "Color Climax No. 3 and No. 4," counts 17, 18, 19, and 22, are reversed. The fines imposed as to counts 17 and 22 are vacated, and the cases are remanded for resentencing.

KENNEDY, Circuit Judge:

I concur in the result.

Kennedy, Circuit Judge, filed a concurring opinion.