UNITED STATES of America,
Plaintiff-Appellee,

v.

Kevin Mark BECKMAN,
Defendant-Appellant.

No. 80–2127.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 30, 1981.

Decided Oct. 21, 1981.

Stanley Kotovsky, Jr., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Don J. Svet, First Asst. U. S. Atty., and Robert J. Baca, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

William W. Deaton, Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Beckman was convicted by a jury on all counts of a three-count indictment charging him with the passing of counterfeit $100 bills in Albuquerque, New Mexico, on April 22, 1980.* Each count was based on a separate passing. On appeal Beckman urges two grounds for reversal: (1) improper closing argument by the prosecutor; and (2)

---

* Beckman was charged with three violations of 18 U.S.C. § 472 (1976) which proscribes the

utterance of forged securities.

ineffective assistance of trial counsel. Neither of these matters has merit, and we therefore affirm.

The government's evidence established, *prima facie*, that Beckman passed three counterfeit $100 bills to three different business establishments in Albuquerque, New Mexico, on April 22, 1980. Six witnesses from these three locations positively identified Beckman as the person who passed the counterfeit bills. In addition, a witness from Portland, Oregon, identified Beckman as a man who had given him counterfeit bills in Portland, Oregon, in March, 1980.

Beckman testified as a witness in his own behalf, and categorically denied passing any counterfeit bills in Albuquerque, New Mexico, on April 22, 1980. He testified that on April 22, 1980, he was in Billings, Montana, and not in Albuquerque, New Mexico. To corroborate his testimony, several alibi witnesses were called, each of whom testified that Beckman was in Billings, Montana, on April 22, 1980. On this general state of the record, the jury, in effect, rejected the alibi defense and found Beckman guilty on all counts.

In his closing argument to the jury, defense counsel characterized the case as one of mistaken identity. He argued that although the government's witnesses were probably not lying, they were nonetheless completely mistaken in their identification of Beckman as the one who passed the counterfeit bills in Albuquerque, New Mexico, on April 22, 1980.

In his final argument to the jury, government counsel accepted the challenge of defense counsel and pursued this line of comment. That particular part of the closing argument which appellant now claims constitutes plain error is set forth as an appendix to this opinion. The gist of the comment was that the jury should recognize that this was much more than a case of witnesses being merely mistaken in their testimony, and indeed that some witnesses were lying. He added that it was for the jury to decide which witnesses were not telling the truth, and advised them to draw

their own conclusions from the evidence which had been presented to them. The prosecutor then attacked the credibility of the individual alibi witnesses, drawing on the evidence which had been received at trial to support his arguments.

■ No contemporaneous objection was made by defense counsel to the prosecutor's closing argument. Under such circumstance, the issue of improper prosecutorial remarks will not be considered for the first time on appeal, absent "plain error," which error must be both serious and prejudicial and must so affect life or liberty that corrective action by an appellate court is required. *United States v. Guerrero*, 517 F.2d 528, 531 (10th Cir. 1975).

■ Our study of the prosecutor's closing argument convinces us that no plain error occurred within the meaning of Fed.R. Crim.P. 52. This is not an instance where the prosecutor placed his own credibility on the scale. *United States v. Martinez*, 487 F.2d 973, 977 (10th Cir. 1973). Nor did he attempt to convey to the jury the impression that he possessed information on the credibility of the alibi witnesses to which the jury was not privy. *United States v. Carleo*, 576 F.2d 846, 852 (10th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978). Moreover, the prosecutor's comment falls far short of the "personalized vouching" for the integrity of government witnesses condemned in *United States v. Ludwig*, 508 F.2d 140, 143 (10th Cir. 1974). In short, the prosecutor's remarks do not constitute such error as would require a reversal.

■ As a second ground for reversal, Beckman contends that he was denied his Sixth Amendment right to counsel. Counsel on appeal, who, of course, did not represent Beckman at trial, asserts that the trial transcript affirmatively demonstrates that trial counsel's representation fell below the degree of reasonable competence required by *Dyer v. Crisp*, 613 F.2d 275, 276 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). We do not agree.

■ Our study of the transcript leads us to conclude that trial counsel's conduct was not subpar. For example, his cross-examination of the government's witnesses, an important aspect of this case, was incisive and indicated that he had not gone into the trial without preparation. The fact that counsel was not on his feet objecting to every question put by the prosecutor doesn't prove counsel's incompetence. In rejecting a similar claim of ineffective assistance of counsel in *United States v. Vader*, 630 F.2d 792 (10th Cir.), *cert. denied*, 449 U.S. 1037, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), we made the following comment which has present applicability:

> Counsel in this Court, who did not represent Vader in the trial of the case, also seeks reversal on the ground that trial counsel was incompetent and that Vader was thereby denied his Sixth Amendment right to the assistance of counsel. We have read the transcript of the trial proceedings and fail to perceive any violation of Vader's right to counsel. In *Dyer v. Crisp*, 613 F.2d 275 (10th Cir.), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980), we held that the Sixth Amendment demands that appointed defense counsel exercise the skill, judgment, and diligence of a reasonably competent defense attorney. In our view of the matter, trial counsel in the instant case exercised such skill, judgment, and diligence. The case was lost, but that doesn't mean that trial counsel's performance was subpar. Much of the criticism leveled against trial counsel in this Court could be categorized as Monday morning quarterbacking. When a case is lost, hindsight, by different counsel, often suggests many ways in which the trial could have been conducted differently. *Id.* at 794.

Judgment affirmed.

### APPENDIX

Mr. Colberg has raised an interesting issue. He talks about mistake on the part of the witnesses that testified, four from Portland—no, I'm sorry, Portland—the four from Billings were factual and knew what they were talking about; the six from Albuquerque, seven, including Virgil Haughn, I guess, except, he didn't mention Portland, and he didn't mention Virgil Haughn. But the six from Albuquerque are mistaken. Well, I think that in courtrooms, just like in life, that we ought to call things like they are, and I'm not going to be so charitable to say that there were witnesses in this case that were mistaken. I'm going to say what this evidence supports, and that is that there were witnesses in this case who were untruthful. They were not mistaken. They had no opportunity to be mistaken. They were simply untruthful, based on this evidence. And I leave it to your deliberations, ladies and gentlemen, which of the witnesses were in fact untruthful. (Tr. 216)

\* \* \* \* \* \*

But to get back to the earlier point, and I think the principal point in any case where there is an alibi defense, that is that people and, I'm sorry to say it, but from this evidence, you can conclude it, that people are not always mistaken when they testify in criminal trials. People falsify. They tell untruths. Yes, they lie. And I want to be on this record saying that that's what has happened in this case. It's for you to decide which of the witnesses practice that deceit.

Finally, I would like to say that in our system of justice, the oath that a witness takes is very important. By your verdict today, I think that you can teach those who walk through courtroom doors and take oaths and then cast them aside when they hit the witness stand can be rectified, and based on that, I believe that you will render a just verdict. Thank you for your time. (Tr. 221)