**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Robert GILMAN, Jr., and Richard
Joseph Martin, Defendants-Appellants.**

**Nos. 81–1058, 81–1059.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1981.

Decided Aug. 16, 1982.

Rehearing Denied Nov. 22, 1982.

Claudia Wilken, Wilken & Leverett, Berkeley, Cal., for defendants-appellants.

Robert Feldman, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before KENNEDY and SKOPIL, Circuit Judges, and BURNS,* District Judge.

SKOPIL, Circuit Judge:

Frank Gilman and co-defendant Richard Martin were convicted of seven counts of mailing obscene material, 18 U.S.C. § 1461 and of one count of conspiracy, 18 U.S.C. § 371. They argue on appeal that (1) violations of fourth amendment rights led to their conviction; (2) jury instructions were erroneous; (3) overt acts in the indictment were prejudicial; and (4) their sentences are excessive.

## FACTS

Appellants were partners in All American Studios, a mail order business distributing sexually explicit magazines and brochures. Postal inspectors, using pseudonyms, or-

---

* The Honorable James M. Burns, Chief Judge for the District of Oregon, sitting by designation.

dered and received "All American" brochures and magazines on dates between January 1977 and June 1978. On July 14, 1978 San Francisco police obtained warrants to search three locations: (1) 924 Grove Street, a building housing All American's offices (the warrant failed to mention that the building was also a residential dwelling); (2) a nearby garage; and (3) Attic Self-Storage, where Gilman rented storage space under a false name. The warrant for 924 Grove Street authorized seizure of certain magazines, a film and business records.

Police searched the three locations, including residential apartments in the 924 Grove Street building. Material seized from Martin's apartment in the building was subsequently suppressed by the trial court. Police found materials in the Grove Street office and seized them pursuant to the warrant. They also seized magazines from the garage after observing them in plain view and obtaining a second warrant. They obtained additional magazines from (1) Attic Self-Storage after obtaining a second warrant, and (2) from Attic's owner who, six weeks later, gave materials unclaimed by Gilman to the FBI. The government introduced these abandoned materials rather than magazines seized in the second search of Attic.

## DISCUSSION

### I. APPELLANTS' FOURTH AMENDMENT RIGHTS

A. Evidence Seized at the 924 Grove Street Offices was Properly Admitted.

The appellants argue that the warrant described an entire building, yet it showed probable cause only for a search of the offices, not the dwelling areas which were a discrete portion of the building. It follows, they contend, both that the warrant was void, and that the entire search effected under it was unlawful.

 The trial court admitted the evidence seized from the offices, and we affirm that ruling.[1] Even if a warrant authorizes the search of an entire premises containing multiple units while reciting probable cause as to a portion of the premises only, it does not follow either that the warrant is void or that the entire search is unlawful. *United States v. Whitney*, 633 F.2d 902 (9th Cir. 1980), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981), stands for this proposition. The general rule voiding the warrant for an undisclosed multiunit structure, *see United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955), does not apply if the defendant was in control of the whole premises or they were occupied in common, if the entire premises were suspect, or if the multiunit character of the premises was not known to the officers. *Whitney*, 633 F.2d at 907 n.3. The record does not support appellants' contention that the officers intentionally omitted facts revealing the multiunit character of the premises. The testimony and affidavits of the officers demonstrate no misconduct on their part. Their surveillance of the premises, a single building, did not alert them to the multiunit character of the building. The officers were not aware that the building contained separate living quarters or that it housed unrelated persons. Further, there was some indication that all the entrants to the building were involved in the activities of All-American, that Gilman was in control of the entire premises, and that the entire building was suspect. The officers did not deliberately conduct a general search of the entire premises, *cf. United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978). The entire warrant was not void.

Probable cause was stated for the offices, and the overbreadth of the warrant does not require suppression of evidence seized pursuant to that aspect of the search. *Cf. VonderAHE v. Howland*, 508 F.2d 364, 369, 372 (9th Cir. 1975).

B. The Second Warrant, Authorizing Seizure of Magazines From the Grove Street Garage, was Properly Issued.

1. Whether the evidence seized from the dwelling places could have been admitted is a question that is neither before us nor necessary to disposition of the case.

■ When police entered the Grove Street garage pursuant to the first warrant, they observed three different magazines in plain view. They secured the garage, took one copy of each of the magazines to a magistrate, obtained a second warrant, returned to the garage, and seized the magazines.

In *United States v. Sherwin*, 572 F.2d 196, 201 (9th Cir. 1977), agents entered premises pursuant to a valid search warrant and seized magazines identified by the warrant and others in plain view. The court held that the plain view exception was "not applicable ... when the magazines seized are ... protected by the First Amendment." *Id.* at 199. The court suggested that

> "A preferable and less intrusive method would be for officers to seal the area to prevent destruction of any publications while they obtained another warrant. This procedure has been used and approved in the context of an obscenity investigation."

*Id.* at 200. *See also G. I. Distributors v. Murphy*, 490 F.2d 1167, 1169 (2d Cir. 1973).

Taking single copies of three magazines to the magistrate did not impede All American's commercial activities.[2] *Compare Lo-Ji Sales, Inc.*, 442 U.S. 319, 327–28, 99 S.Ct. 2319, 2324–2325, 60 L.Ed.2d 920 (1979). Issuance of a second warrant was not only proper, but, as suggested by *Sherwin*, a preferred procedure. Appellants allege that officers may not even take samples of the magazines, because *Sherwin* disapproved of the fact that the officer, not the magistrate, made the initial determination of probable obscenity, stating that "[t]he fact that the agents took only samples ... does not solve the underlying problem that a magistrate failed to 'focus searchingly on the question of obscenity' prior to seizure." 572 F.2d at 200. In *Sherwin*, though, the court was concerned with the fact that a magistrate did not authorize the seizure of

the unlisted magazines because a second warrant was not sought. Here the officers took samples to the magistrate for the express purpose of securing a second warrant. The preferred procedure is for the magistrate to make his decision of probable cause on the basis of direct evidence. *See United States v. Tupler*, 564 F.2d 1294, 1298 (9th Cir. 1977) ("A searching focus on obscenity requires the issuing judge or magistrate to base his evaluation of probable cause on direct evidence of the contents of at least a fair sample of the material itself"); *United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976) (en banc), *cert. denied*, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978).

Denial of the motion to suppress was proper.

C. Evidence Abandoned at Attic Self-Storage was Properly Admitted.

■ It is well settled that "[i]f a person has voluntarily abandoned property, he has no standing to complain of its search or seizure." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976) (citing *Abel v. United States*, 362 U.S. 217, 240–41, 80 S.Ct. 683, 697–698, 4 L.Ed.2d 668 (1960)). Abandonment is determined by measuring the intent of a party in objective terms. It may "be inferred from words, acts and other objective facts ... [that] the person ... relinquished ... a reasonable expectation of privacy in his property." *United States v. Jackson*, 544 F.2d at 409; *United States v. Sledge*, 650 F.2d 1075, 1077 (9th Cir. 1981).

■ Facts of this case indicate that Gilman had relinquished a reasonable expectation of privacy in his property. In response to notice from the management of Attic Self-Storage that his goods would be considered abandoned if he did not convey an intent to keep them or pay additional rent for storage, Gilman did nothing. Twenty-seven days after the date for reclaim-

2. The Supreme Court stated in *Heller v. New York*, 413 U.S. 483, 492, 93 S.Ct. 2789, 2794, 37 L.Ed.2d 745 (1973), that "seizing films to destroy them or to block their distribution or exhibition is a very different matter from seiz-

ing a single copy ... for the *bona fide* purpose of preserving it as evidence." *See also United States v. Jacobs*, 513 F.2d 564, 567 n.3 (9th Cir. 1975).

Gilman's property had passed, the company turned unclaimed magazines over to authorities. Facts of this case "support ... the conclusion that both the landlord and the officers acted reasonably in relying on the appearance of abandonment." *United States v. Sledge*, 650 F.2d at 1082. *See United States v. Kendall*, 655 F.2d 199, 202 (9th Cir. 1981).

■ The appellants properly assert that "a loss of standing to challenge a search cannot be brought about by unlawful police conduct." *United States v. Maryland*, 479 F.2d 566, 568 (5th Cir. 1973); *United States v. Humphrey*, 549 F.2d 650, 652 (9th Cir. 1977). Abandonment of property in response to police investigation does not *per se* render abandonment involuntary. *See United States v. Veatch*, 647 F.2d 995, 998 n.5 (9th Cir. 1981) (citing *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc)). There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed. *United States v. Maryland*, 479 F.2d at 568; *United States v. Haddad*, 558 F.2d 968, 975 n.6 (9th Cir. 1977). Turning to the present case, we find no infirmities in police conduct such as to render the abandonment involuntary. *Compare United States v. Beck*, 602 F.2d 726, 729–30 (5th Cir. 1979).

■ We find that probable cause supported issuance of the original search warrant for Attic Self-Storage. While a single affidavit was used to obtain warrants for 924 Grove Street and the storage facility, the one paragraph relating to Attic Self-Storage, based on an entire reading of the affidavit, provided an adequate basis for finding probable cause.[3] It "contained more than conclusory allegations of obsceni-

ty ... [and] was sufficient to allow the magistrate to make his own determination of probable cause." *United States v. Sherwin*, 572 F.2d at 198. *See United States v. Fogarty*, 663 F.2d 928, 930 (9th Cir. 1981). Because magazines specified in the original affidavit were not found at the storage facility, police obtained a second warrant after seizing copies of other materials and taking them to a magistrate who viewed materials prior to issuance of the second warrant. Even had issuance of the second warrant not complied with procedures recommended by *Sherwin*, any possible impropriety would have been too remote to have tainted seizure of the abandoned materials. *See United States v. Haddad*, 558 F.2d at 975 n.6.

## II. NO ERROR WAS COMMITTED WITH RESPECT TO JURY INSTRUCTIONS AND THE GOVERNMENT'S CLOSING ARGUMENT

### A. Standard of Review.

■ The appellants claim error in certain jury instructions and in the government's closing argument. Since they did not raise these claims at trial, "there must be plain error to afford a basis for reversal." *United States v. Perez*, 491 F.2d 167, 173 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). It is well settled that "plain error is a highly prejudicial error affecting substantial rights," *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), and that "[o]nly in exceptional situations will this court reverse a criminal conviction because of plain error." *U. S. v. Krasn*, 614 F.2d 1229, 1235–36 (9th Cir. 1980).

---

3. The affidavit relating to Attic Self-Storage was as follows: On June 29, 1978, Agent Young interviewed Tim Michaels, who is a clerk at Attic Self-Storage, 2440 16th Street, San Francisco. Officer Don Daniels had, in May of 1978, followed the blue El Camino to Attic Self-Storage. Michaels informed Young that FRANK GILMAN, whom he identified from a Department of Motor Vehicles photograph, had rented space GC–236 in the name of Jim Morrison, 832 Fillmore Street, San Francisco. Michaels said that GILMAN drove a blue El Camino. Michaels further stated that he had seen several cardboard boxes in space GC–236 containing magazines with nude males in various poses on the covers. Michaels said he believed the magazines were homosexual in character. Agent Young related all of this to affiant.

B. The Government's Emphasis on "Patently Offensive" in Closing Argument Did Not Constitute Plain Error.

 *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), established a three-prong test for determining whether materials are obscene.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, (citation omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

The government made clear to the jury that this was the applicable test and the court clearly instructed the jury as to the test elements. *Compare United States v. Sherpix, Inc.*, 512 F.2d 1361, 1365–66 (D.C.Cir. 1975). The appellants contend that the Government misstated and simplified the test, and thereby misled the jury, by constantly emphasizing during closing argument the second *Miller* factor, that of patent offensiveness to the community. It is highly unlikely that the Government's emphasis on "patently offensive" in closing argument prejudiced the outcome of the trial. *Compare United States v. Segna*, 555 F.2d 226, 232 (9th Cir. 1977). "Certainly it was insufficient to constitute plain error." *United States v. Parker*, 549 F.2d 1217, 1223 (9th Cir. 1977). *See United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980); *United States v. Beckman*, 662 F.2d 661, 662 (9th Cir. 1981).

C. There was No Error in the Court's Instruction on Prurient Interest.

 The appellants object to the court's instruction on prurient interest contending that the government "failed to produce any evidence of a clearly defined sexual group to which the material would appeal." In *Pinkus v. United States*, 436 U.S. 293, 302–03, 98 S.Ct. 1808, 1814, 56 L.Ed.2d 293 (1978), the Supreme Court stated:

"Nothing prevents a court from giving an instruction on prurient appeal to deviant sexual groups as part of an instruction pertaining to appeal to the average person when the evidence, as here, would support such a charge . . . Whether materials are obscene generally can be decided by viewing them; expert testimony is not necessary."

While the jury must not determine obscenity merely on the basis of "speculation and suspicion about the prurient appeal of material to some unknown, undefined person," *United States v. Klaw*, 350 F.2d 155, 167 (2d Cir. 1965), here magazines and brochures in evidence left little to the imagination of the jury. Their explicit titles reflected the purpose of the materials and the audience to whom they were directed. This was not an extreme case requiring expert testimony but rather one in which "the exhibits themselves sufficiently guided the jury." *Pinkus v. United States*, 436 U.S. at 303, 98 S.Ct. at 1814. *See United States v. Cutting*, 538 F.2d 835, 838 (9th Cir. 1976).

D. There was no Error in the Court's Failure to Exclude "Children" from the Definition of "Community".

 The court gave the following instruction on community standards:

"Contemporary community standards are set by what is in fact accepted by the community as a whole; that is to say by society at large, or people in general, and not by what some persons or groups of persons may believe the community as a whole ought to accept or refuse to accept."

Relying on *Pinkus v. United States*, 436 U.S. at 296–97, 98 S.Ct. at 1811, the appellants now argue for the first time that failure to explicitly exclude children from the definition of community was erroneous. The *Pinkus* court held that children were not to be included as part of the definition of community. Nowhere, however, did the court suggest that children must be excluded. The instruction as given did not constitute plain error.

## III. INCLUSION OF OVERT ACTS IN THE INDICTMENT WAS PROPER

The appellants contend that overt acts listed in the conspiracy count of the indictment contained prejudicial information and should have been stricken. The acts were that:

1. Martin used the facilities at the San Francisco Redevelopment Agency on at least one occasion to print order forms for obscene magazines.

2. Gilman and Martin offered for sale two different obscene magazines which contained photographs taken at Martin's home.

As elements of the crime of conspiracy the overt acts were relevant and properly included. *See, e.g., United States v. Kalama,* 549 F.2d 594, 595–96 (9th Cir. 1976). *See also United States v. Satterfield,* 548 F.2d 1341, 1346 (9th Cir. 1977). Regardless of the appellants' willingness to stipulate, the government was entitled to prove the conspiracy by introduction of probative evidence. *Compare United States v. Durcan,* 539 F.2d 29, 30–31 (9th Cir. 1976).

## IV. THE SENTENCES IMPOSED WERE NOT EXCESSIVE

The trial judge noted the "extreme gravity of the case." The 15-year sentence imposed on appellant Gilman and the 10-year sentence imposed on appellant Martin were within statutory limits. Such a case is "generally not subject to review." *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. See,* 505 F.2d 845, 857 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

AFFIRMED.