**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Robert S. HALE, Defendant/Appellant.**

**No. 85–5163.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1986.

Decided March 21, 1986.

Joan P. Weber, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Roger W. Haines, Jr., Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff/appellee.

Thomas F. Homann, San Diego, Cal., for defendant/appellant.

Before FARRIS, PREGERSON and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

Robert S. Hale appeals from his conviction for receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and for receiving obscene merchandise imported contrary to law in violation of 19 U.S.C. § 1305 and 18 U.S.C. § 545. We affirm in part.

STATEMENT OF THE CASE

On May 4, 1984 Hale placed an order by mail with Delta Books, a distributor in the Netherlands, for two magazines and four sets of photographs to be sent to him by mail. He enclosed a check in full payment, and noted the order and $58.00 payment in his journal, along with the notation, (1) "Joe and His Uncle," (2) "Bambino," and that there were ten photos in each photoset.

On May 21, 1984, the Child Protection Act of 1984, P.L. No. 28–292, 98 Stat. 204 (1984) became effective, amending 18 U.S.C. § 2252(a)(2) to make it illegal to

receive by mail any material depicting minors engaged in sexually explicit conduct.[1]

On May 24, 1984, Hale received notice from Customs authorities advising him that a set of ten photos addressed to him had been intercepted, appeared to be obscene within the meaning of 19 U.S.C. § 1305, and was therefore subject to seizure and forfeiture.[2] Hale stipulated that he read the notice and elected to waive or abandon any interest he might have in the material by not responding.

On May 29, 1984, a Customs Mail Technician opened and inspected an envelope arriving in the country from the Netherlands addressed to Hale. Inside the envelope was a magazine entitled "Bambino 6." It had been ordered by Hale on May 4, 1984, and contained sexually explicit pictures.

On June 1, 1984 and June 12, 1984, Customs inspectors intercepted and inspected three more envelopes arriving from the Netherlands. The envelopes contained the remaining three sets of ten photographs that Hale had ordered on May 4, 1984. Customs officials considered the sexually explicit "Bambino" magazine and the three sets of pictures to be obscene and on that basis seized the contents of all four envelopes. No notice of the seizures was sent to Hale by the Customs Service and no forfeiture proceedings were ever commenced pursuant to 19 U.S.C. § 1305 in the appropriate district court.

On the basis of this evidence, a Customs Agent sought a search warrant for Hale's home. In his affidavit, the Agent recounted the inspection and seizure of the four envelopes, and provided copies of the seized materials to the magistrate. The agent stated his intention "to have the previously described envelopes delivered as addressed by an employee of the United States Postal Service," and then to execute

---

1. 18 U.S.C. § 2252 provides:

   (a) Any person who—

   . . . .

   (2) knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed ... if—

   (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

   (B) such visual depiction is of such conduct;

   shall be punished as provided in subsection (b) of this section.

   18 U.S.C. § 2255 defines the terms used in § 2252.

   For the purposes of this chapter, the term—

   (1) "minor" means any person under the age of eighteen years;

   (2) "sexually explicit conduct" means actual or simulated—

   (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

   (B) bestiality;

   (C) masturbation;

   (D) sadistic or masochistic abuse; or

   (E) lascivious exhibition of the genitals or public area of any person;

   (3) "producing" means producing, directing, manufacturing, issuing, publishing, or advertising; and

   (4) "organization" means a person other than an individual.

2. 18 U.S.C. § 545 provides:

   Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

   Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   . . . .

   19 U.S.C. § 1305 provides:

   (a) All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral.... No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the appropriate customs officer that the obscene or other prohibited articles contained in the package were inclosed therein without the knowledge or consent of the importer, owner, agent, or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided....

   . . . .

the search warrant after delivery was confirmed.

On June 22, 1985, a magistrate issued a warrant authorizing the search of Hale's home for the "Bambino" magazine and the three sets of ten photographs which were to be delivered to Hale. The warrant also authorized search and seizure of "correspondence, receipts, bills of sale, order forms, advertisement brochures and other documents related to the importation, receipt, sale and/or distribution of said magazine and photographs or any other books, magazines, photographs, negatives, or films depicting obscene, lewd, lascivious or indecent sexual conduct, which are evidence, fruits and instrumentalities...."

On June 25, 1984, the four envelopes containing the magazine and photographs were delivered to Hale at his home by a United States Postal Service carrier. The packages were handed to Hale in the front yard of his home at 12:40 p.m. The residence was then kept under constant surveillance by Customs officials until 2:30 p.m. when agents served the search warrant.

Upon entering the residence, an agent advised Hale of his *Miranda* rights, which Hale waived. Hale told the agents that the envelopes were in his bedroom on the second floor of the residence. The agents seized the envelopes. Hale had not opened them, although it was apparent that they had been opened and inspected by Customs. Also seized from Hale's home were 45 books and magazines, among them "Joe and His Uncle" and Hale's handwritten records of his order for the two magazines and four sets of photographs.

The grand jury handed down a ten-count indictment. Five counts were based on violations of 18 U.S.C. § 2252, in that Hale knowingly received child pornography in the form of 3 sets of photos and 2 magazines. The other five counts were based on 19 U.S.C. § 1305 and 18 U.S.C. § 545, in that Hale knowingly received merchandise imported contrary to law.

Hale's motions to suppress, for return of property, and to dismiss were denied. Hale and the government thereafter stipulated that Hale did not intend to sell or distribute any of the magazines or pictures and that he intended to use all the magazines and pictures for his own personal use inside his home. It was further stipulated that an expert for the government would testify that the material shows minors under the age of 18 engaged in sexually explicit conduct within the meaning of 18 U.S.C. § 2255, including actual or simulated oral sex, masturbation, sexual intercourse and lewd exhibition of the genitals, in violation of 18 U.S.C. § 2252(a)(2), and that the materials are obscene. Hale also stipulated that he would not challenge on appeal the sufficiency of the evidence to support a finding of obscenity.

Hale was found guilty in a bench trial on all ten counts. His sentence was suspended, and he was granted three years probation and fined $500.00. Hale filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

DISCUSSION

1. Was the warrant invalid?

The issues raised by Hale regarding the validity of the search warrant involve an application of law to fact requiring the consideration of legal principles. In such circumstances, particularly when constitutional rights are implicated, our review is *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201–4 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Hale argues first that the warrant is invalid because it was issued before the pornography was delivered. When evidence, however, is on a sure course to its destination, as in the mail, the prior issuance of a warrant is permissible. *United States v. Goff*, 681 F.2d 1238, 1240 (9th Cir.1982). Hale's reliance on *United States v. Hendricks*, 743 F.2d 653 (9th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) is misplaced. In *Hendricks*, the evidence was not on a sure and irreversible course to its destination; the defendant in that case was re-

quired to pick it up personally, an act which he might or might not have done if the government had not taken that decision out of his hands by attempting a controlled delivery. In the instant case, the evidence was in the mail addressed to Hale for home delivery; a controlled delivery pursuant to a warrant issued earlier is, in this situation, permissible.

■ Hale argues also that the warrant is invalid because it allowed for the search and seizure of unnamed "obscene, lewd, lascivious or indecent" material. Partial invalidity of a warrant (assuming arguendo that this portion of the warrant is invalid) does not taint the entire warrant. *United States v. Gomez-Soto,* 723 F.2d 649, 654 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982). The portion of the warrant that specifically described "Bambino" and the three sets of photographs is valid.

■ The only item which formed the basis for the indictment and conviction but was not specified in the warrant was the magazine "Joe and His Uncle." Under Supreme Court and Ninth Circuit precedent, the "First Amendment imposes special constraints on searches for and seizures of presumptively protected material ... and requires that the Fourth Amendment be applied with 'scrupulous exactitude' in such circumstances." *Maryland v. Macon,* — U.S. ——, 105 S.Ct. 2778, 2781-2, 86 L.Ed.2d 370 (1985); *United States v. Sherwin,* 572 F.2d 196, 199-200 (9th Cir.1977), *cert. denied,* 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978); *United States v. Tupler,* 564 F.2d 1294, 1297 (9th Cir.1977). As we have held, "Because of the First Amendment, the seizure of all publications must meet higher procedural standards than normal." *Sherwin,* 572 F.2d at 200.

These "higher procedural standards" take two forms. First, the warrant must specifically describe the material to be seized. Blanket clauses that do not refer to specific items and to material directly related to specific items are not proper bases for constitutional searches and sei-

zures. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323-24, 60 L.Ed.2d 920 (1979); *Roaden v. Kentucky,* 413 U.S. 496, 506, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973); *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511-12, 13 L.Ed.2d 431 (1965); *Sherwin,* 572 F.2d at 200. Second, the exceptions to the warrant requirement are narrowly construed. The plain view exception argued by the government, for example, cannot be used to search for or seize alleged obscenity or alleged child pornography that is unspecified in the warrant. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326 n. 5, 99 S.Ct. 2319, 2324 n. 5, 60 L.Ed.2d 920 (1979); *Sherwin,* 572 F.2d at 200. Otherwise, police officers could seize any publication or film they deem to be unprotected by the First Amendment, thereby subverting the higher procedural standards that require a neutral magistrate to make the initial determination of probable cause as to specific items. The fact that child pornography is unprotected by the First Amendment is irrelevant. All expression is presumptively protected at the time of the warrantless seizure; child pornography is no different in this regard from obscenity.

Applying these "higher procedural standards" to the seizure of "Joe and His Uncle," we conclude that the magazine was improperly seized and should have been excluded. There is no basis in the warrant for the seizure of "Joe and His Uncle." The first part of the warrant did not specifically describe the magazine, and the second part of the warrant is too general to support the seizure of material that was, at the time of the seizure, arguably protected by the First Amendment. Since there is no basis in the record for the seizure of "Joe and His Uncle," we consider whether the good faith exception to the exclusionary rule should nevertheless allow the introduction of "Joe and His Uncle" in evidence. *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under *Leon,* evidence will not be suppressed if the officers seized it in reasonable and

good faith reliance on the warrant. *Id.* at 3422.

■ Hale objects that this issue was not raised in the district court and should not now be reviewed. Because the government prevailed at Hale's suppression hearing, however, there was no reason for the good faith exception to be raised. The government did not need to argue the *Leon* exception, because it was able to put "Joe and His Uncle" in evidence on the warrant alone. We therefore address the question.

■ *Leon* "requires officers to have a reasonable knowledge of what the law prohibits." *Leon* at 3420 n. 20 (citations omitted). Our holding, which applies existing law to the facts of this case, prohibits the seizure of "Joe and His Uncle" because it was not particularly described and because the blanket clause in the warrant is too general. As the Supreme Court observed in *Leon,* "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 3421 n. 23. Our holding that the warrant was impermissibly overbroad with respect to any material arguably protected by the First Amendment other than that specifically named rests on well-established current law, and it is not unreasonable to require executing officers to know it. Moreover, we have serious doubts whether material arguably protected by the First Amendment which is seized pursuant to overbroad provisions of a warrant can ever be admitted through the good faith exception. *See Leon,* 104 S.Ct. at 3422; *United States v. Washington,* 782 F.2d 807, 818 (9th Cir.1986). Therefore, we reverse Hale's convictions on the two counts based on "Joe and His Uncle." [3]

2. Was there sufficient evidence to support the conviction?

There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir. 1984).

a. Did Hale knowingly receive materials imported contrary to law?

■ Hale's first argument on this issue is that the materials he received were not "imported" because customs had a duty under 19 U.S.C. § 1305 to seize the materials and because the materials never left the constructive possession of the government. The materials did in fact leave the possession of the government when Hale voluntarily accepted them through the mail. When he received the material through this permissible "controlled delivery," Hale completed the chain of importation. *See Illinois v. Andreas* 463 U.S. 765, 769, 103 S.Ct. 3319, 3322–23, 77 L.Ed.2d 1003 (1983). We need not decide whether the chain was completed prior to actual delivery.

■ We reject Hale's argument that the government's failure to seize the materials and begin forfeiture proceedings nullifies his violation. The district court properly held that forfeiture proceedings exist to protect First Amendment interests from destruction and censorship rather than to alter the way the government seizes and holds evidence for a criminal investigation and trial. Hale had the right to request a judicial determination of obscenity, *Heller v. New York,* 413 U.S. 483, 492, 93 S.Ct. 2789, 2794–95, 37 L.Ed.2d 745 (1973). His election to waive that right by voluntarily entering into a stipulation precludes his challenge on appeal to the absence of such a hearing. *See Piepenburg v. Cutter,* 649 F.2d 783, 790 (10th Cir.1981). Moreover, the procedures set out in § 1305 do not automatically create rights in criminal de-

---

**3.** Counsel for Hale contended at oral argument that reversal of the convictions based on the counts involving "Joe and His Uncle" would require reversal of the other convictions as well.

As we make clear in part 2 of this opinion, however, there is sufficient evidence independent of "Joe and His Uncle" to support the other convictions.

fendants who have allegedly violated that section. The violation antedates the forfeiture proceedings, and governmental noncompliance with the forfeiture proceedings does not absolve the defendant of his earlier violation.

■ Hale's final challenge to the sufficiency of the evidence is that he lacked the requisite scienter. He claims that the evidence is insufficient to show that 1) he knew the materials were imported contrary to law or 2) he knew the contents of the magazines and photographs.

He urges us to find that because the envelopes had obviously been opened and inspected before delivery and § 1305 requires seizure of imported obscenity, he could correctly assume that the government had sanitized his mail, delivering only permissible materials. He argues that this is especially true since other material had been inspected and seized.

We understand but reject the argument. Government agents are obligated to enforce laws, but their failure to do so does not provide a defense to violation of the plain language of the statute.

■ Hale's second argument is that, although he knew the general nature of the material, he did not know the actual contents. This argument fails. Hale stipulated to the material's obscenity and its nature as child pornography. His statements upon his arrest, contained in the stipulations, indicated a clear intent to add child pornography to his collection of pornography. He recognized in his stipulation that a rational trier-of-fact could find him guilty. There is sufficient evidence to support the conclusion that he "knowingly received" the material.

3. Does Hale's conviction violate the ex post facto clause?

■ Hale was free of guilt in ordering the materials and in awaiting their delivery, even after the statute had been amended. Receiving the materials after the effective date of the amendment was a voluntary act that violated the statute. There was no violation of the ex post facto clause of the constitution.

4. Does Hale's conviction violate his right privately to possess printed expression?

Hale argues that his conviction under § 2252 violates the rule of *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), which protects the private possession of books, films, and other forms of expression. We need not reach the argument. Hale was convicted for receiving the materials, not possessing them. *See United States v. Orito*, 413 U.S. 139, 141–42, 93 S.Ct. 2674, 2676–77, 37 L.Ed.2d 513 (1973) (Court rejects the reasoning that the right to possess obscene material in the home creates the correlative right to receive it, transport it, or distribute it). *See also United States v. Thirty-seven Photographs*, 402 U.S. 363, 370, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971); *United States v. Reidel*, 402 U.S. 351, 356, 91 S.Ct. 1410, 1412–13, 28 L.Ed.2d 813 (1971); *United States v. Miller*, 776 F.2d 978, 980–81 (11th Cir.1985).

Affirmed in Part and Reversed in Part.[4] Since the Government substantially prevailed, it shall recover its costs.

---

**4.** The district court sentenced Hale on count one relating to "Bambino" to a fine of $500 and three years supervised probation conditional on participation in psychiatric treatment. The court then imposed sentences of three years probation for each of the remaining nine counts to run concurrently with the sentence for count one. Since our reversal of the two counts concerning "Joe and His Uncle" will not affect Hale's effective sentence, we need not remand to the district court for resentencing.