**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward John MARCHANT,
Defendant-Appellant.**

No. 86–1205.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1986.

Lloyd Scurlock, Fort Worth, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., J. Michael Worley, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant Edward John Marchant was convicted in a bench trial of knowingly receiving child pornography in violation of

18 U.S.C. § 2252.[1] Marchant appeals his conviction, alleging insufficient evidence to support the scienter element of § 2252(a)(2) and, alternatively, that application of § 2252(a)(2) to persons who knowingly receive child pornography for personal use violates the First Amendment. Marchant's contentions are without merit, and we affirm the trial court.

## I. Facts

Marchant admitted at trial that he has been a collector of sexually explicit (pornographic) materials for several years, and that he frequently corresponds with other individuals about pornographic materials. Marchant ordered many of these materials from abroad, allegedly five at a time, through price lists or through brochures that show small pictures of the covers of pornographic magazines. Marchant received the magazines at a post-office box, which he listed under multiple aliases. At some point prior to January 1985, Marchant ordered at least one "Lolita" magazine. Six "Lolita" magazines were seized by officials in Jamaica, New York, and a notice of seizure was sent to Marchant. Marchant claims to have had no knowledge that "Lolita" magazines were child pornography and to have had no "Lolita" magazines in his possession at that time. Marchant learned that "there was a problem with messing around with child pornography ... [and that] it's no problem as long as [he didn't] order 'Lolita's'...." Tr., Vol. 2, at 129. Marchant subsequently received at his post office box a "Lolita Extra Z," which he put in a dresser drawer in his bedroom. Marchant claims that he placed an order for five adult pornographic magazines, but that he received the "Lolita Extra Z" and other magazines that he did not order.

On May 14, 1985, postal inspectors seized six pornographic magazines addressed to one of the aliases at Marchant's post office box. One of the magazines seized, "Lolita Color Special 18," was the child pornography upon which Marchant's conviction is based. Another of the magazines contained pornographic depictions of humans with animals. Customs officials, cooperating with the post office, performed a controlled delivery of the seized magazines. Marchant accepted the magazines, took them to his home, and placed them, after examination, in the drawer containing the "Lolita Extra Z." Marchant testified that he had ordered only five magazines, all of which he claims were adult pornography. He contends that, of the four magazines he ordered that were received, he knew that two were "hard core," presumed that a third was "hard core," and did not know about the fourth. He asserts that he did not receive "Color Climax," the fifth magazine which he had ordered. He also testified that he did not know the contents of the package when he accepted it from the post office, and that he was not interested

1. 18 U.S.C. § 2252, "Certain activities relating to material involving the sexual exploitation of minors," provides:
  (a) Any person who—
    (1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if—
    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (B) such visual depiction is of such conduct; or
    (2) knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—
    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (B) such visual depiction is of such conduct;
shall be punished as provided in subsection (b) of this section.
  (b) Any individual who violates this section shall be fined not more than $100,000, or imprisoned not more than 10 years, or both, but if such individual has a prior conviction under this section, such individual shall be fined not more $200,000, or imprisoned not less than two years nor more than 15 years, or both. Any organization which violates this section shall be fined not more than $250,000.

in and did not order either "Lolita" that he received. Marchant "guessed" that he received the child pornography and bestiality magazines because discount pornography suppliers substitute available magazines, rather than refund the purchase price, when they run out of the ordered magazines.

After performing the controlled delivery, customs and postal officials obtained a search warrant for the premises of Marchant's home. The search was executed on May 22, 1985. The officials seized multiple "hard core" pornographic magazines, including bestiality magazines and magazines with titles such as "Teenage Sex 20," "Teenager 17," "Schulmadchen 4," "Sweet Little 16," the "Lolita Extra Z," and the six magazines subject to the controlled delivery. Also seized were several hundred letters (some of which contained currency sent to Marchant, allegedly to defray his cost of sending pornographic pictures), and several thousand photographic negatives of pictures from pornographic magazines. Finally, the officials seized a letter from a woman in Oklahoma addressed to Marchant, not to an alias. The letter expressed thanks for a picture that Marchant had sent, and promised to reciprocate with a picture of herself and her son Marvin. The letter stated: "[Marvin] just turned three years old this year, and he is all boy if you know what I mean." Marchant contends that this was a "lonely hearts type letter, rather than a pornographic contact letter." Tr. Vol. 2, at 134.

Marchant was charged with the knowing receipt of sexually explicit material involving minors that has been shipped in interstate or foreign commerce, 18 U.S.C. § 2252, and with the use of the mails to receive nonmailable material, 18 U.S.C. § 1461. At the bench trial, the customs agent in charge of the case testified that the practice in child pornography shipment is to order pornography pre-paid and to mail ordered materials, without invoices or letters. No letters accompany such materials even when the ordered materials are not available or when an overpayment is made. The agent also testified that such materials are not sent unless payment is received in advance, and that he had never heard of anyone paying for materials to be received by anyone else. The trial judge acquitted Marchant on the use of the mail count, but returned a guilty verdict on the knowing receipt of child pornography. Marchant appeals.

## II. Sufficiency of the Evidence to Find Scienter

■ Marchant argues that insufficient evidence was adduced at trial to support the scienter requirement of 18 U.S.C. § 2252, that he *knowingly* received child pornography. The standard of review was fully set forth in *United States v. Niver*, 689 F.2d 520, 529 (5th Cir.1982):

[W]e must consider the evidence in the light most favorable to the government. Our task is not to reweigh the evidence or to determine the credibility of the witnesses, and we must affirm the verdict if it is supported by substantial evidence. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).... "The test is whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty...." *Gordon v. United States*, 438 F.2d 858, 868 n. 30 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971); *United States v. Hull*, 437 F.2d 1, 3 (5th Cir. 1971); *see generally* 3 C. Wright, *Federal Practice and Procedure* § 374 (1982).

Stated differently, we review the entire record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Marchant here argues that the receipt of the "Lolita Color Special 18" that formed the basis for conviction; the previous or-

dering of at least one clearly child-pornographic "Lolita" magazine, allegedly before understanding the nature of its contents; the possession of one "Lolita" and of other questionably child pornographic "teen" magazines; the placement of the "Lolita Color Special 18" in the same dresser as another, allegedly non-ordered, "Lolita" magazine in Marchant's collection; the unlikely coincidences of receiving two "Lolita" magazines that were not ordered and of (but for seizure) receiving on two occasions six magazines instead of the five allegedly ordered; the testimony of the customs official that magazines were sent only if pre-paid; the possession of a letter allegedly indicating Marchant's interest regarding child pornography; and the possession of a notice of seizure of six "Lolita" magazines are all insufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that Marchant had *knowingly* received the "Lolita Color Special 18," rather than unknowingly receiving a substitution for what he had allegedly ordered. This argument is hogwash.

Because we draw all inferences in favor of the government, the fact of receipt by itself *might* be sufficient to infer, beyond a reasonable doubt, that the receiver knows what he obtains. There can, it is true, be possession or receipt of objectionable material in ways that perfume the contents possessed or received. When the receipt occurs at the invention or with the consent of the possessor, it is more difficult to camouflage the fulsome scent of forbidden knowledge. Here, there is a veritable sty full of facts and inferences from which to detect the fragrance of scienter. The record indicates that "Lolita Color Special 18" was not received on April Fool's Day, and we are not so naive as to require reversal on Marchant's mere protestation that Lolita was a stranger in his household.

There is no question that a trier of fact could reasonably conclude beyond a reasonable doubt that Marchant intended to and

knowingly received the "Lolita Color Special 18." Other courts similarly have rejected challenges to the sufficiency of evidence to support scienter in receipt of child pornography. *See, e.g., United States v. Hurt*, 795 F.2d 765, 773–74 (9th Cir.1986); *United States v. Hale*, 784 F.2d 1465, 1471 (9th Cir.1986).

### III. Unconstitutional Application of .18 U.S.C. § 2252 to Knowing Receipt of Child Pornography for Personal Use

■ Because there is sufficient evidence of knowing receipt, we must address Marchant's constitutional challenge to 18 U.S.C. § 2252, as applied. Child pornography under § 2252 falls within the standards of *New York v. Ferber*, 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982). *Ferber* held the First Amendment does not protect materials that *"visually* depict sexual conduct by children below a specified age. The category of 'sexual conduct' must also be suitably limited and described." Id. (emphasis in original). Marchant does not dispute that "Lolita Color Special 18" is child pornography within 18 U.S.C. § 2252, nor does he address whether the pornography in question falls within the *Ferber* criteria of unprotected material. *See Ferber*, 458 U.S. at 764–765, 102 S.Ct. at 3358–59. Rather, Marchant argues that, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), establishes that the First Amendment shields knowing receipt of child pornography from criminal prosecution.

Because *Stanley* protects the right to possess obscene material[2] in the privacy of one's own home, *Stanley* allegedly protects the right to possess child pornography in one's own home. We are unable to locate any post-*Ferber* cases that *directly* address whether the *Stanley* right applies to child pornography, as well as to obscenity. *Cf. United States v. Garot* and *United States v. Janell Ruth van Y*, 801 F.2d 1241, 1246 n. 5 (10th Cir.1986) (refusing to reach con-

---

**2.** Obscenity is not protected by the First Amendment. *See Miller v. California*, 413 U.S. 15,

93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

stitutionality of an Oklahoma statute prohibiting possession of child pornography because conviction was not based on possession); *United States v. Thoma,* 726 F.2d 1191, 1198 (7th Cir.1984) (implicitly assuming that *Stanley* applies to child pornography in determining that an investigation did not "impermissibly induce" defendant to leave the *Stanley* zone of protection), *cert. denied* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). We too do not reach this question, because *Stanley* does not extend to knowing receipt, even if it does extend to child pornography.

The Supreme Court's determination in *United States v. Orito,* 413 U.S. 139, 141, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973), is controlling: "[T]he essence of Appellee's contention is that *Stanley* has firmly established the right to possess obscene material in the privacy of the home and that this creates a correlative right to receive it, transport it, or distribute it. We have rejected that reasoning." *See also United States v. 12 200–ft Reels of Super 8mm. Film,* 413 U.S. 123, 127, 129, 93 S.Ct. 2665, 2668, 2669, 37 L.Ed.2d 500 (1973) (the attempt to extend *Stanley* "overlooks the explicitly narrow and precisely delineated *privacy* right on which *Stanley* rests. That holding reflects no more than what Mr. Justice Harlan characterized as the law's 'solicitude to protect the privacies of the life within [the home].' *Poe v. Ullman,* 367 U.S. 497, 551, 81 S.Ct. 1752, 1781, 6 L.Ed.2d 989 (1961) (dissenting opinion)…. The Constitution does not compel, and Congress has not authorized, an exception for private use of obscene material.") (footnotes omitted) (emphasis added); *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971) (refusing to extend *Stanley* to commercial distribution of pornography); *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (refusing to extend Stanley to importation of pornography from abroad). Existing authority from other circuits holds that *Orito* controls the

application of *Stanley* to knowing receipt of child pornography, whether under 18 U.S.C. § 2252 or otherwise. *See Hurt,* 795 F.2d at 771; *Hale,* 784 F.2d at 1471; *United States v. Miller,* 776 F.2d 978 (11th Cir.1985), *cert denied,* — U.S. —, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). We are bound by *Orito,*[3] and the judgment of the district court is AFFIRMED.

---

**3.** Although we recognize that possession of pornography in the home logically entails its receipt, unless the pornography is produced

by the possessor, the existing cases make indubitably clear the fact that *Stanley* does not protect knowing receipt.