**UNITED STATES of America,
Appellant,**

v.

**Lowell BROWN.**

**No. 88–5363.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 17, 1988.

Decided Dec. 15, 1988.

Rehearing and Rehearing In Banc
Denied Jan. 12, 1989.

Samuel A. Alito, U.S. Atty., Marion Percell (argued), Asst. U.S. Atty., Newark, N.J., for appellant.

David E. Schafer (argued), Asst. Federal Public Defender, Trenton, N.J., for appellee.

Before STAPLETON, SCIRICA and COWEN, Circuit Judges.

### OPINION OF THE COURT

COWEN, Circuit Judge.

The United States appeals the order of the district court acquitting defendant Lowell Brown ("Brown") of knowingly receiving child pornography in violation of 18 U.S.C. § 2252 (1986). Brown was found guilty by a jury on February 18, 1988. The district court thereafter granted his motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) on April 19, 1988.

We determine that the district court erred in its construction of the statute. We also conclude that the evidence, when viewed in the light most favorable to the United States, supports the jury's verdict. Accordingly, we will vacate the order of acquittal, reinstate the jury verdict of

guilty, and remand the matter to the district court for sentencing.

### I.

As part of a sting operation named "Project Looking Glass," the United States Postal Inspection Service in the spring of 1986 sent letters to certain individuals identified as being interested in child pornography. These individuals' names had appeared on lists compiled from investigations by the Postal Inspection Service and the United States Customs Service, and from information provided by state and local police. The letters were sent by a sham company dubbed Far Eastern Trading Corporation ("Far Eastern"), which purported to be based overseas and to deal in child pornography. The letters stated that "we have devised a method of getting these [child pornography materials] to you without prying eyes of U.S. Customs seizing your mail," and invited the recipients to respond for further information. App. at 166.[1]

One such letter was sent to Brown. In order to obtain further information, he provided his name and address on a coupon attached to the letter, signed it, and returned it to the address given in the letter. Far Eastern responded with a letter to Brown stating that its catalogue would be available in the fall of 1986, and also that it would be producing its own child pornography publication. In December 1986, Brown wrote inquiring about the delay and requesting a catalogue. At about the same time, a catalogue was sent to him.

The catalogue had been compiled by a postal inspector. It contained the same descriptions of movies, videotapes, and magazines which had actually been used by the child pornography distributors in their own catalogues. It was accompanied by a letter containing ordering instructions. Because the Postal Inspection Service did not expect to actually sell anything from the catalogue, the letter instructed the purchaser to order materials COD rather than to send money. In addition, because the Postal Inspection Service was seeking people who were interested in submitting, as well as receiving child pornography, another letter accompanying the catalogue described a magazine which Far Eastern planned to publish, and offered preference to any individual who sent materials to Far Eastern. There is no dispute that the catalogue describes pornographic materials involving children and that the materials described in the catalogue constitute child pornography.

On the same day he received the catalogue, Brown wrote back to Far Eastern. Relevant excerpts of that letter include the following:

> I would like to enter a business relationship for priority service, but I do not currently have the necessary material you require. Hopefully, by summer 1987

---

1. The Appendix references throughout this opinion refer to the Appendix of the Appellant. The initial letter from Far Eastern states in relevant part:

 Dear Potential Friend:
 As many of you know, much hysterical nonsense has appeared in the American media concerning "pornography" and what must be done to stop it from coming across your borders.... We have read the comments of Mr. Van Rabb of your Customs Service concerning the efforts of his agents to find "children's pornography" and we find that many of you are denied a product because of that agency. After conversation with enlightened Americans, we have found that if material is given to your post without a Custom Inspection, a search warrant must be gotten in order to open your mail.
 For those of you who have enjoyed youthful material from publishers such as COQ, Color

 Climax, Rodox and others, we have devised a method of getting these to you without prying eyes of U.S. Customs seizing your mail. All material that you order from our company will be sent to you through our branch office in the U.S. Virgin Islands. After consultation with American solicitors, we have been advised that once we have posted our material through your system, it cannot be opened for any inspection without authorization of a judge.
 If you want further information, please complete the following coupon and disclaimer and post it to the listed addresses....
 App. at 166. The disclaimer read: "I affirm that I am not a law enforcement officer or agent of the U.S. Government acting in an undercover capacity for the purpose of entrapping Far Eastern Trading Company, its agents or customers. I am 21 years of age." *Id.*

I will have something to offer. However, I would still very much appreciate your considering me as a customer. But in the interest of establishing as safe an exchange system as possible, allow me to explain my situation. Three years ago I had a problem with U.S. Customs though nothing legal ever developed. For a short time (6 months) some of my mail was opened, especially cartons or boxes. However over the last two years I have ordered adult materials ... through the mails with no problems whatsoever....
I am interested in your "Teen Sex Video" series (all 3 titles). While I am not concerned with receiving mainstream adult videos C.O.D., I would be concerned at receiving this video series C.O.D. because might it not attract more attention than if it were pre-payed.

. . . .

[I]f you accept me as a customer, would you take prepayment.

. . . .

I would appreciate your reply & opinion. I would have written you sooner.... [But] ... I wanted to wait to see if you really had what I wanted.

App. at 173–75. In a postscript Brown asked, "[i]f I were to buy films from you," whether he would be permitted to transfer films to videotape and return the films for partial credit against future orders. App. at 175.[2]

The videotapes that Brown requested were three tapes in the "Teen Sex" series, a well-established child pornography series featuring pubescent children, as opposed to completely undeveloped younger children. The Postal Inspection Service had not planned to ship any of the items in the catalogue, and did not have the tapes which Brown requested. After receiving Brown's letter in January 1987, however, it decided to turn "Project Looking Glass" into a reverse sting operation in which materials would be sold to the individuals who placed orders. The Postal Inspection Service then prepared a revised catalogue containing only those items which it had in stock as a result of previous seizures of materials.

In February 1987, Far Eastern wrote its customers indicating that the company had suffered a seizure of its materials in Central America. In March 1987, Far Eastern mailed the revised catalogue. By June 1987, Brown had not responded to either the February or the March mailings from Far Eastern, and the Postal Inspection Service decided to attempt to fill Brown's initial request. Because the Postal Inspection Service did not have the "Teen Sex" series of videotapes, a videotape entitled "Preteen Trio" was sent to Brown instead. "Preteen Trio" had been included in the original catalogue Brown received, and it was chosen as the videotape most closely resembling the "Teen Sex" tapes which Brown requested.

The government applied for and was granted a search warrant based on probable cause that Brown would receive the "Preteen Trio" tape. On June 10, a postal inspector posed as a letter carrier and attempted to deliver the tape. The postal inspector knocked on Brown's door, but no one answered. Later that day, the postal inspector placed in Brown's mail slot a notice indicating that a package was being held at the post office for Brown, and that he could pick it up the next day, June 11. Brown failed to appear at the post office.

On the morning of June 12, 1987, a postal inspector again went to Brown's house to deliver the "Preteen Trio" videotape to Brown, but no one answered. Later that day, the postal inspector returned to Brown's house. This time, Brown answered the door and accepted the package. The package bore the following return address: "Far Eastern Trading Co., LTD, P.O. Box 3071, Frederiksted, St. Croix, U.S. Virgin Islands." Brown looked at the package and took it upstairs.

Fifteen minutes later, postal inspectors knocked on Brown's door and executed the search warrant. The inspectors found the opened parcel containing "Preteen Trio", as

**2.** The catalogue sent to Brown offered selections in the form of eight millimeter film as well as videotape.

well as other pornographic videotapes in the house.

A postal inspector testified at trial that "Preteen Trio" and four other videotapes found in Brown's home constituted child pornography. Portions of all five videotapes were shown at trial to allow the jury to determine whether the tapes constituted child pornography.

## II.

■ The primary issue on this appeal is whether the district court's construction of 18 U.S.C. § 2252(a)(2) is correct. Because this poses a pure question of law, our review is plenary. *United States ex rel. Forman v. McCall*, 776 F.2d 1156, 1161 (3d Cir.1985), *cert. denied.*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986).

The indictment charges that Brown "did knowingly and willfully receive 'Preteen Trio,' a video tape ... which visually depicted and whose production involved the use of minors engaging in sexually explicit conduct" in violation of 18 U.S.C. § 2252(a)(2). That statute provides for the punishment of any person who:

> knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed ... if—
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (B) such visual depiction is of such conduct. . . .

18 U.S.C. § 2252(a)(2). The district court agreed with the jury's findings that Brown received the "Preteen Trio" videotape, that the tape constituted child pornography, and that when Brown received the tape he knew that it constituted child pornography.[3]

The district court, however, found that Brown did not receive the "Preteen Trio" tape "knowingly", because he had not ordered that tape, but instead had ordered three tapes in the "Teen Sex" series. The court concluded: "In short, the Government has not proven a knowing reception [sic] of the video he is charged with having received. Although Brown may have attempted to violate the statute, § 2252 contains no provision for an attempted receipt." App. at 180–81. On appeal, the United States contends that the district court erred in reading the statute as requiring Brown to have known not merely that the package he received was child pornography, but also the specific contents of the videotape in the package—i.e., that it contained the "Preteen Trio" videotape.

The starting point of our analysis is the language of the statute. The relevant portion of section 2252 provides for the punishment of any person who "knowingly receives ... *any visual depiction* that has been ... mailed" if the depiction constitutes child pornography. 18 U.S.C. § 2252(a)(2) (emphasis added). The statute does not require that a recipient of child pornography know the precise contents of such materials. Rather, the statutory words "any visual depiction" compel the view that the recipient need only know that the material he receives is child pornography. The jury found and the district court agreed that Brown received the "Preteen Trio" tape knowing that it was child pornography. We hold, therefore, that the court erred in concluding Brown did not knowingly receive the "Preteen Trio" tape merely because it was not the same child pornography tape that he had requested.

We have found no case directly on point with the facts of the present matter, nor has any been brought to our attention.[4]

---

**3.** In this opinion, for convenience we shall use the phrase "child pornography" to refer to material which meets the statutory description "any visual depiction" if "such visual depiction involves the use of a minor engaging in sexually explicit conduct" and "such visual depiction is of such conduct". 18 U.S.C. § 2252(a)(2).

**4.** In *United States v. Hale*, 784 F.2d 1465 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986), the defendant argued that "although he knew the general nature of the material, he did not know the actual contents." *Id.* at 1471. There, the defendant had stipulated as to his intent to obtain child pornography, and the district court found sufficient evidence to support the conclusion that he had "knowingly

The United States, however, has pointed to a number of narcotics cases to support its argument that it matters not whether Brown knew the particular piece of child pornography he received, as long as he knowingly received child pornography. In *United States v. Kairouz*, 751 F.2d 467 (1st Cir.1985), the defendant was charged with importation and possession of heroin, and his defense was that he believed he was carrying cocaine rather than heroin. The district court instructed the jury that if the defendant knew he carried a controlled substance, it was irrelevant that he mistakenly believed the substance to be cocaine. 751 F.2d at 468.

The Court of Appeals for the First Circuit in *Kairouz* approved the district court's jury instruction, emphasizing that the statute in question prohibited intentional conduct regarding *all listed controlled substances*, including both heroin and cocaine. The Court stated: "What is of essence to establish [the intent] element of the offense is that the substance be controlled within the meaning of [the statute], *not which* one of the proscribed substances it happens to be." *Id.* (emphasis in original).

The Court of Appeals for the Ninth Circuit has held likewise in several drug cases. *See, e.g., United States v. Lopez-Martinez*, 725 F.2d 471, 475 (9th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984) ("[Defendant] was charged with importing and possessing a controlled substance, heroin, and the evidence established ... that he did so. The evidence also established ... that he intended to import marihuana, which, like heroin, is a schedule I [controlled] substance. It was not necessary for the government to prove that he knew he was importing heroin...."); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir.) (*in banc*) ("[A] defendant who has knowledge that he possesses a controlled

substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses."), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Davis*, 501 F.2d 1344, 1346 (9th Cir.1974) (per curiam) ("The government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing.").

This view has also been adopted by Courts of Appeals for the Second Circuit, *see United States v. Morales*, 577 F.2d 769, 776 (2d Cir.1978), the Fifth Circuit, *see United States v. Rodriguez*, 588 F.2d 1003, 1010 (5th Cir.1979), and the Eleventh Circuit, *see United States v. Lewis*, 676 F.2d 508, 512 (11th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). Indeed, a district court has noted: "It is well settled that one who sells a controlled substance mistakenly believing that he is selling a different controlled substance is nonetheless guilty of the substantive offense of distributing the controlled substance he actually sells." *United States v. Betancourt*, 594 F.Supp. 686, 690 (S.D.N.Y. 1984).

The statutes construed in the drug cases above are strongly analogous to 18 U.S.C. § 2252, the child pornography statute. Both the drug statutes and the child pornography statute require specific knowledge or intent as to a *general category* of unlawful items, but not as to particular items within that category. The drug statutes prohibit the intentional importation, possession, and distribution of *any controlled substance*. The child pornography statute similarly prohibits the knowing receipt of *any child pornography*.

We find the courts' reasoning in the drug cases persuasive in the instant case. To require proof that a defendant knew the *specific contents* of an item of child pornography finds no support in the language

received" such material. *Id.* The Court of Appeals for the Ninth Circuit affirmed the defendant's conviction.

The *Hale* Court, however, did not specify whether it interpreted § 2252 as *not requiring* the defendant to know the specific contents of the child pornography he received; or, instead,

whether the it simply determined that sufficient evidence existed for the district court to have found that the defendant *did* know the actual contents. *Id.* Moreover, because the defendant received the exact photographs which he had ordered, the *Hale* case did not address the issue of *substituted* child pornography materials.

of section 2252. Nor is such a result supported by the policy of the statute, or by common sense. Although the tape constituting child pornography which Brown received was different from the child pornography tapes that he requested, he nonetheless "knowingly received" child pornography. We hold that the district court incorrectly construed the statute and erred in entering an order acquitting Brown.

### III.

Brown also argues that there was insufficient evidence to support the guilty verdict in this case. Specifically, he argues that the government did not prove that he knowingly received child pornography because there was insufficient evidence to show that he ordered any videotape, and because there was insufficient evidence to show that the "Teen Sex" series tapes did in fact constitute child pornography. Our standard of review of a claim of insufficient evidence to support a guilty verdict is narrow. We must determine whether there is substantial evidence, when viewed in a light most favorable to the United States, to support the jury's finding of guilt beyond a reasonable doubt. *Government of Virgin Islands v. Williams*, 739 F.2d 936, 940 (3d Cir.1984).

### A.

 Brown first contends that he did not knowingly receive child pornography because he did not *order any tape* from Far Eastern. Brown argues that because he did not order a tape, he could not have expected to receive one, and thus he could not have knowingly received a tape containing child pornography.

The district court determined that "[t]here was certainly sufficient evidence at trial to allow the jury to find that Brown was attempting to procure child pornography *by placing an order for the 'Teen Sex'*

series." App. at 180 (emphasis added). The court recognized, however, that section 2252 does not require proof that a defendant *ordered* child pornography, but merely that he knowingly *received* it. The court stated: "As noted, the criminal act is the reception [sic] of that material. Evidence of what was ordered is, nevertheless, certainly relevant to ascertaining the intent of the defendant receiving the material." App. at 180.[5]

We agree that evidence of Brown ordering the tape is helpful, but *not required*, in establishing that he intended to receive, and thus did knowingly receive, child pornography. We recognize several factors which might suggest that Brown did not in fact "order" the videotapes. First, the tentative, questioning letter from Brown to Far Eastern (stating "I am interested in your 'Teen Sex Video' series (all 3 titles)") might be considered an inquiry rather than an order. Also, Brown did not respond to the next two communications from Far Eastern. Finally, Brown's request for prepayment was never responded to, nor did the delivery man process the delivery COD.

Brown's letter nonetheless *could* lead a reasonable finder of fact to conclude that Brown did order the videotapes. Thus, we agree with the district court that sufficient evidence was presented from which the jury could find that Brown ordered the tapes. However, because section 2252(a)(2) does not require proof that a defendant *ordered* child pornography, we need not resolve this issue. It is enough for the jury to find that Brown knowingly *received* child pornography, and the evidence was sufficient to allow the jury to make this finding. Brown's knowing receipt was demonstrated by his strong interest in receiving child pornography, as evidenced by the collection of child pornography found in his home and his solicitation of child pornography as expressed in his letter and other correspondence with Far Eastern.[6]

---

**5.** In addition, the district court correctly noted, app. at 179, that if an act is voluntary and intentional, then it has been performed knowingly. *See, e.g., United States v. Rubio*, 834 F.2d 442, 448 (5th Cir.1987); *United States v. Jewell*,

532 F.2d 697, 699 (9th Cir.), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

**6.** We find no difficulty with the admission into evidence of the child pornography found, along with "Preteen Trio", in Brown's home. Admis-

Further evidence of Brown's knowing receipt of child pornography included testimony that Brown looked at the package when it was delivered to him. Brown contends that no evidence was introduced to show that he saw the return address label marked "Far Eastern Trading Co." when he received the package. Appellee's Brief at 14. To the contrary, strong *circumstantial* evidence exists which would indicate that Brown did see the address label. The postal inspector who delivered the package testified that Brown looked at the package briefly when it was handed to him. App. at 82. It would not be unreasonable for the jury to infer that, when Brown received and looked at the package, he noticed the return address which indicated that the package had been sent by Far Eastern.

Moreover, given that Brown had received three separate sets of correspondence, including two catalogues, from Far Eastern, and that he had responded to the first correspondence with a detailed and considered letter of his own, we think it is reasonable for the jury to infer that at the time Brown received the package he remembered Far Eastern as a purveyor of child pornography.

For the above reasons, we conclude that, when viewed in a light most favorable to the United States, substantial evidence exists to support the jury's finding that Brown knowingly received child pornography.

### B.

■ Brown's second evidentiary argument is that insufficient evidence existed to show that the tapes in the "Teen Sex" series which he requested did in fact constitute child pornography. He argues, therefore, that he could not have "knowingly received" child pornography. The district court determined that "[t]here was certainly sufficient evidence at trial to allow the jury to find that Brown was attempting *to procure child pornography by placing an order for the 'Teen Sex' series."* App. at 180 (emphasis added). Brown contends, however, that because the United States failed to show a videotape from the "Teen Sex" series, there was insufficient evidence from which the jury could find that the material that Brown requested was child pornography.

We find Brown's argument unpersuasive. He correctly notes that the only tapes shown at trial were the "Preteen Trio" tape, received by Brown courtesy of "Operation Looking Glass," and the four additional child pornography tapes found at Brown's home. However, "Teen Sex" was relevant only to the issue of Brown's state of mind at the time he received the package from Far Eastern. Accordingly, the only relevant fact with respect to "Teen Sex" was what Brown believed it depicted. Brown's understanding on that score came from the catalogue and, based on the catalogue's description of "Teen Sex," the jury was justified in concluding that Brown believed it depicted minors engaged in sexually explicit conduct.[7]

### IV.

We acknowledge this is a novel case because of the substitution of the videotape. Nonetheless, we find that under a proper construction of the statute, the substitution of one child pornography tape for another does not convert Brown's conduct from knowing to unknowing receipt of child pornography. Moreover, the jury was free to make proper inferences from all the evidence, both direct and circumstantial, on the issue of Brown's knowing receipt. Finally, the testimony of the postal inspector provided sufficient evidence from which the

---

sion of this material was properly within the discretion of the district court, to show "proof of ... intent, ... knowledge, ... or absence of mistake or accident" under Fed.R.Evid. 404(b).

7. We are not alone in rejecting challenges to the sufficiency of evidence regarding knowledge in cases involving receipt of child pornography. *See, e.g., United States v. Marchant,* 803 F.2d 174, 176–77 (5th Cir.1986); *United States v. Hurt,* 795 F.2d 765, 773–74 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987); *United States v. Hale,* 784 F.2d 1465, 1471 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986).

jury could, if it desired, find that the tapes which Brown requested did in fact constitute child pornography. When viewed in the light most favorable to the United States, substantial evidence exists to support the jury's finding beyond a reasonable doubt that Brown knowingly received child pornography.

Accordingly, we will vacate the order of acquittal, reinstate the jury verdict of guilty, and remand the matter to the district court for sentencing.