917 F.2d 1305
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bryan SNOW, Defendant-Appellant.
 No. 90-1300.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Bryan Snow ("defendant") appeals from the district court's December 28, 1989 order denying his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Defendant asserts that the judgment of conviction and sentence entered after the jury's guilty verdict for unlawful receipt of child pornography through the mails in violation of 18 U.S.C. Sec. 2252, and importation of child pornography in violation of 18 U.S.C. Sec. 545 was not supported by substantial evidence. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On December 23, 1988, defendant, a former Kalamazoo, Michigan, Fireman and Police Patrol Officer, residing with his girlfriend, Paula Morris, ordered two publications containing nude photographs, titled Teenies and Petites Stars from F.M.D. of Paris, France. He paid $75, by check, for said materials. He placed these orders from a catalogue which he had previously received in the mail from F.M.D. The catalogues contained small photographs of the cover of each publication, together with written explanations of the contents in French.
 
 
 3
 On January 24, 1989, Senior United States Custom Inspector Mel Soto ("Inspector Soto") intercepted and opened a package from F.M.D. addressed to defendant. This package contained the above mentioned publications, Teenies and Petites Stars, which featured models under eighteen years of age. This package also contained two catalogues describing materials available from F.M.D.
 
 
 4
 Inspector Soto believed that these publications contained visual depictions of minors engaging in sexually explicit conduct, the knowing receipt of which is prohibited by 18 U.S.C. Sec. 2252. He transferred custody of the package to Special Agent Gregory Dahl ("Agent Dahl"), United States Customs Service, Office of Enforcement, Grand Rapids, Michigan, for purposes of conducting a criminal investigation. Upon his receipt of the package, Agent Dahl contacted Captain Daniel Weston ("Captain Weston") of the Kalamazoo Department of Public Safety. Captain Weston informed Agent Dahl that defendant was Weston's subordinate employee. Captain Weston assisted Agent Dahl in his investigation of defendant and initiated a Public Safety Department Internal Affairs investigation of defendant as well.
 
 
 5
 Agent Dahl and United States Postal Inspector Michael O'Hara ("Inspector O'Hara") then arranged a controlled delivery of the package from F.M.D. and obtained a search warrant to be executed at the defendant's residence at the time of delivery. On March 3, 1989, under surveillance, at the Portage, Michigan Post Office, defendant picked up the package. Government agents followed him to his residence, executed the search warrant, and seized the package and its contents. Captain Weston accompanied the agents during the execution of the search warrant.
 
 
 6
 During the search, the government agents found the package unopened on defendant's office desk, but were initially unable to find any evidence of payment for the package. At one point during the search, Captain Weston was standing by defendant when defendant initiated a conversation. Defendant asked Captain Weston what was going on, to which Captain Weston replied that customs agents had intercepted a package. The defendant then replied, "yeah, it's a girly book that I ordered." Following a couple of moments of silence, defendant volunteered "Well, I like little girls, I admit that, but I'm smart enough not to touch them". Joint Appendix, at 72-76. (Testimony of Captain Weston).
 
 
 7
 Defendant then indicated to Captain Weston that he wanted to make a statement. Captain Weston then contacted Agent Dahl, who had previously advised defendant of his Miranda rights. At this time, another agent renewed the Miranda warnings. Agent Dahl then opened the package and displayed the contents to defendant. Defendant admitted ordering the publications. He stated the he had ordered them from a catalogue similar to the one contained in the package. In response to Agent Dahl's query as to the whereabouts of any evidence of payment, defendant voluntarily retrieved a cancelled check in the amount of $75 from under his desk blotter and gave it to Dahl. He stated that he did not understand French and had "just guessed" the price. Joint Appendix at p. 97. (Testimony of Agent Dahl). He also stated that he ordered the publications from the titles and pictures in the catalogue, that he had never ordered from overseas before and that he thought the models would be at least eighteen years of age.
 
 
 8
 At trial, a forensic pathologist, Dr. Stephen Cohle, examined the seized publications and concluded that in his medical opinion all the models in Petites Stars were under eighteen, and in fact, probably not even eleven or twelve years of age. He could not state an opinion as to whether the models in Teenies were under eighteen.
 
 
 9
 On September 12, 1989, a grand jury for the Western District of Michigan returned a two count indictment: count 1 charged defendant with violations of 18 U.S.C. Sec. 2252(a)(2)(A)(B), (b) as well as 18 U.S.C. Sec. 2256, count 2 charged defendant with violations of 18 U.S.C. Secs. 2, 545.
 
 
 10
 Subsequent to a jury trial held on December 8, 1989, defendant was found guilty on both counts. Defendant then filed a motion for judgment of acquittal on December 15, 1989. The district denied the motion on December 28, 1989. Judge Bell sentenced defendant by on February 15, 1990, to eighteen months' imprisonment on each count, to run concurrently. On February 20, 1990, defendant filed a timely notice of appeal with this Court.
 
 II.
 A.
 
 11
 On appeal, defendant argues that the government failed to establish that defendant is guilty of receiving a visual depiction of a minor engaged in sexually explicit conduct that had been mailed or transported in interstate or foreign commerce.
 
 
 12
 Defendant contests on appeal, as he did at trial, the knowledge element of the offense. He asserts that he did not know that the publication Petites Stars contained visual depictions of minors engaging in sexually explicit conduct, at the time he ordered it. He argues that there was insufficient evidence from which the jury could reasonably find beyond a reasonable doubt that he had the requisite knowledge.
 
 
 13
 The government responds that, viewed in the light most favorable to the government, the evidence introduced at trial clearly established that defendant had the requisite knowledge. We agree.
 
 B.
 
 14
 When reviewing the sufficiency of the evidence supporting a criminal conviction, "we must reverse only if the evidence is such that a reasonable mind could not find guilt beyond a reasonable doubt." United States v. Stull, 743 F.2d 439, 442 (6th Cir.1984). The evidence must be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 90 (1942); United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988).
 
 III.
 
 15
 For the proposition that evidence of predisposition toward child pornography was partially necessary for there to be sufficient evidence to convict defendant, he cites several cases where the trier of fact was presented with evidence of child pornography in the home pre-existing the arrival of the child pornography, the receipt of which the defendants were prosecuted for. See United States v. Marchant, 803 F.2d 174 (5th Cir.1986); United States v. Hale, 784 F.2d 1465 (9th Cir.1986); United States v. Garot, 801 F.2d 1241 (10th Cir.1986). Defendant argues that such pre-existing possession is vital to proof of knowledge of the contents of the package and his intent on its receipt.[1] We disagree.
 
 
 16
 In United States v. Brown, 862 F.2d 1033, 1037-38 (3rd Cir.1988), the court held that Sec. 2252(a)(2) requires specific knowledge as to a general category of unlawful items, not as to particular items within that category. The statute prohibits the knowing receipt of any child pornography. 18 U.S.C. Sec. 2252(a) does not require knowledge of the illegality of mailing child pornography. United States v. Moncini, 882 F.2d 401 (9th Cir.1989). In Brown, although the defendant received a tape constituting child pornography which was different from the child pornography tape he requested, he nonetheless knowingly received child pornography. As in the instant case, evidence of what was ordered is relevant to ascertaining the intent of the defendant to order the material. Id. The court further stated that the defendant Brown's knowing receipt was demonstrated by his strong interest in receiving child pornography as evidenced by the collection of child pornography found in his home and his solicitation of child pornography as expressed in his letter to the mailing supplier. The Brown court, however, did not state that predisposition to child pornography was required in order to establish the requisite knowledge. Id. at 1038, n. 6.
 
 
 17
 In United States v. Marchant, 803 F.2d 174, 177-78 (5th Cir.1986), the defendant admitted to being a collector of sexually explicit, pornographic, materials for several years. At the time of the execution of the search warrant, among other pornographic materials seized was a letter indicating his interest in child pornography from a mother offering to send him a picture of her "all boy" son. Defendant Marchant had also previously ordered a child pornography magazine from the same mail order company. In response to defendant's argument that there was insufficient evidence to support a finding that he knowingly received the child pornography, the court disposed of this argument in short order:
 
 
 18
 When the receipt occurs at the invention or with the consent of the possessor, it is more difficult to camouflage the forbidden scent of forbidden knowledge. Here, there is a veritable sty full of facts and inferences from which to detect the fragrance of scienter. Id.
 
 
 19
 Thus, as there was sufficient evidence to support the determination that defendant intended to knowingly receive child pornography where the defendant had previously ordered at least one clearly child pornographic magazine before receipt of the magazine in question, the court affirmed the conviction. Id. See also, United States v. Hale, 784 F.2d 1465, 1471 (9th Cir.1986).
 
 
 20
 Defendant also relies on United States v. Garot, 810 F.2d 1241 (10th Cir.1986) for the proposition that evidence of predisposition is indicative of knowing receipt of child pornography. In Garot, as in the aforementioned cases, defendants possessed pre-existing child pornographic materials. The court stated that such evidence was "vital" to proof of defendants' knowledge of the contents of the offending package. Id. at 1247. Defendant in the instant case relies heavily on this statement. He contends that "vital" in this context requires evidence of pre-existing possession in order to prove knowledge. The Garot court characterizes the evidence of possession as "vital" because it was offered by the government solely to prove knowledge as a vital element to meeting its burden of proof. The possession evidence was admitted because it was relevant to knowledge of the contents of the package in question, and therefore, probative of commission of the offense charged. Id.
 
 
 21
 In sum, defendant maintains there was no evidence that he attempted to secrete his order, payment or receipt of the publications in question. There was no evidence that he knew of the contents of the publications, and no evidence that he accepted that publication after having an opportunity to examine it. Nor was there any evidence that he possessed a predisposition toward child pornography. For the latter assertion, defendant points out that while he indicated that he liked little girls, he did not indicate that he liked to look at little girls, much less nude little girls.
 
 
 22
 Although the above cases show that predisposition can show knowledge, they do not stand for the proposition that in the absence of predisposition the government cannot prove knowledge by other means. Predisposition, evidenced by pre-existing possession of child pornography is a sufficient but not a necessary proof of knowledge. Here, proof of knowledge has been established by means other than pre-disposition or pre-existing possession of child pornography.
 
 
 23
 The evidence adduced, viewed in the light most favorable to the government, clearly establishes beyond a reasonable doubt that defendant possessed the requisite knowledge. The jury was correctly instructed on this matter of proof of knowledge:
 
 
 24
 The Government must prove that the defendant knew the material he ordered was child pornography. The government need not prove that the defendant knew the precise contents of the material he ordered. For example, the government does not have to prove that the defendant knew the ages of the models or the specific poses in the photographs.
 
 
 25
 Joint Appendix at p. 153. United States v. Brown, 862 F.2d 1033, 1036 (3rd Cir.1988); See also United States v. Moncini, 882 F.2d 401, 404 (9th Cir.1989) (holding that section 2252(a) does not require that the government prove that the defendant had precise knowledge of the nature of the contents of the visual depictions but that defendant had knowledge of the nature of the contents of the visual depictions).
 
 
 26
 The most damning evidence is established by defendant himself. The statements made to Captain Weston, at defendant's own initiation, during the execution of the search of defendant's residence are sufficient to establish knowledge. Defendant asked Captain Weston what was going on. When defendant was told about the package having been intercepted by customs, but before he was shown the contents of the package, he supplied the information as to where it was from France. He stated, "Yeah it's a girly book that I ordered", and, further, "Well, I like little girls, I admit that, but I'm smart enough not to touch them." Joint Appendix, p. 72-76 (Testimony of Captain Weston).
 
 
 27
 Defendant's inculpatory statement does not lead to an inference that he did not know the magazines would contain the visual depictions actually found. Coupled with defendant's subsequent voluntary statement to Agent Dahl,[2] this earlier statement would not preclude a trier of fact from finding guilt beyond a reasonable doubt. The cancelled check, with which he paid for the two publications, Petites Stars and Teenies, and which he voluntarily supplied to Dahl, has the names of the publications he ordered written on it in the memo section. Further, the amount of the check, $75, is extremely accurate for someone trying to convince a trier of fact that one cannot understand French, and thus was not aware of the type of merchandise one was purchasing. The cost of the magazines in United States currency is $74.58. The unusually high price also indicates that defendant knew the publications were unusual in some respect.
 
 
 28
 Defendant also admitted to Dahl that the advertisement, or catalogue accompanying his order was similar to the material from which he ordered the magazine Petites Stars. It features photographs of the covers of hundreds of pornographic magazines, almost exclusively depicting adult models. While the accompanying text is in French, which defendant claims not to understand, the nature of the materials is evident from the photographic content of the covers. The cover of Petites Stars, for example, in this context, features an obviously prepubescent girl in a shirt ending just below her waist; her genital area is covered, but only by underpants or a bathing suit bottom. The pose is, however, sexually suggestive. The depiction of a very young girl in the context of a publication featuring almost exclusively pornographic material supports the finding that the defendant knew the material he ordered was child pornography. Further, the defendant's selection of Teenies in conjunction with Petites Stars indicates his expectation of visual, sexual depictions of young girls. Even though the government's expert witness could not state with certainty that the models in Teenies were under age, it is reasonable for the jury to surmise that the title certainly fosters that expectation. The term Teenies is not limited to encompassing those who have reached the age of majority. Thus, defendant's selection of Teenies is a fact from which a reasonable inference may be drawn as to defendant's state of mind, his expectations and his knowledge.
 
 III.
 
 29
 Finding that the evidence supports the jury's finding that defendant knowingly received child pornography, we AFFIRM the judgment and commitment order of the Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan.
 
 
 
 [1]
 Defendant does not assert an entrapment defense: that he was not predisposed towards child pornography, therefore the agents implanted a criminal design in the mind of an otherwise law abiding citizen, thereby entrapping him. The applicable standard in considering an entrapment defense was enunciated in United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). See also, United States v. Silva, 846 F.2d 352, 354-55 (6th Cir.), cert. denied, 109 S.Ct. 365 (1988) (when the uncontradicted evidence shows lack of predisposition, entrapment can be determined as a matter oflaw); United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988) (once the issue of predisposition is in dispute, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the offense)
 
 
 [2]
 Defendant told the officer that this was the first time he had ordered from overseas, and that while he had purchased numerous pictures of nudes in the past year, and although the models had looked young, he thought they would probably be over eighteen